Tommy Ray SULLIVAN *v.* STATE of Arkansas

CR 85-69                                    696 S.W.2d 709

Supreme Court of Arkansas
Opinion delivered September 23, 1985

*William R. Simpson, Jr.*, Public Defender, and *Howard W. Koopman*, Deputy Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Connie Griffin*, Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant, as a result of his having killed three young women during an episode in Little Rock, was convicted of capital murder and burglary and was sentenced to life imprisonment without parole and to a 30-year prison term. His two arguments for reversal relate to the composition of the jury.

We have decided his first contention, that a death-qualified jury is unconstitutional, adversely to his position. *Rector v. State*, 280 Ark. 385, 659 S.W.2d 168 (1983). We adhere to that holding.

Second, the defense moved to quash the jury panel on the ground that the Arkansas system of selecting jurors at random from the current list of registered voters, Ark. Stat. Ann. § 39-205.1 (Supp. 1985), does not result in a jury drawn from a fair cross-section of the community as a whole, because under this system blacks and persons between the ages of eighteen and thirty-four are under-represented. It is now insisted that the trial judge should have quashed the jury panel.

This particular challenge to a jury is a comparatively new one that has not been fully explored in other states. As far as we know, no court has yet sustained the argument. In Arizona such a challenge was rejected. *State* v. *Bernal*, 137 Ariz. 421, 671 P.2d 399 (1983). In the case primarily relied upon by the appellant, the Supreme Court of California held that the defendant's proof in support of his motion to quash made a prima facie showing of unconstitutionality, which the State should have been required to answer with proof. *People* v. *Harris*, 36 Cal. 3d 36, 201 Cal. Rptr. 782, 679 P.2d 433 (1984).

In the California case the defense presented convincing evidence that the use of the voter registration list in the selection of juries in Los Angeles County had resulted in a significant

under-representation of blacks and Hispanics. Facts and percentages were based on questionnaires answered by almost a thousand jurors in Long Beach and Los Angeles. The *Harris* opinion noted that in California multiple sources for the identification of potential jurors were already being used in 29 of the 46 California counties and that after the *Harris* trial the use of multiple lists had been mandated by a new California statute.

■ We do not reach the constitutional issue, because the appellant's proof in the trial court was so deficient that the motion to quash the panel could not reasonably have been sustained. In this court we cannot consider even the possibility of striking down the system of jury selection in Arkansas on the basis of the vague proof that has been submitted.

The defense introduced only certain testimony given by Professor Art English in a different case two years earlier. Dr. English may be an expert in the field of jury selection, but if so his qualifications as such are not shown. He has a Ph.D. in political science and was teaching that subject at U.A.L.R. Of course, political science does not necessarily have anything to do with the selection of juries. The witness said that he was familiar with "the relatively few studies related to the demographics of voter registration," but the studies were not identified nor introduced into evidence. As far as the record shows, the views stated by Dr. English were his own personal beliefs.

He testified that the limited number of studies "tend to show that blacks and persons under the age of 30 are under-represented" on the registration rolls. He gave no percentages; so the under-representation may not be significant. He frankly conceded that the percentage of registered black voters in Pulaski County would increase in 1984, owing to increased registration efforts. The studies he relied on were based not on voter registration but on voter turn-outs. Even so, he expressed the opinion that the voter registration list for Pulaski County would reflect that black registrants comprise significantly less than the percentage of blacks in the total population. He at once added, "The above opinion is not verifiable," because registration records do not show race. He said that without an accurate study he could not make a definitive judgment about the under-representation of persons under the age of 30 in Pulaski County.

Dr. English's entire testimony from the earlier case barely exceeds three pages in the typewritten record before us. It is fair to say that, except for population percentages based on census figures, his testimony contains no positive statement of any relevant fact.

■ In view of the deficiencies in the proof we must follow our settled rule of not deciding a constitutional question that is not squarely presented. We have examined other possible errors brought to our attention by the abstracts and briefs and find no reversible error in what appears to have been a fair trial.

Affirmed.

PURTLE, J., not participating.